IN THE SUPREME COURT OF TEXAS















IN THE SUPREME COURT OF TEXAS

 

════════════

No. 02-1009 

════════════

 

Tom Alexander, Individually, and 

Alexander & McEvily,
Petitioners

 

v.

 

Turtur & Associates, Inc.,
Mario Turtur, Steve Turtur, 

and the Turtur Family
Partnership, Respondents

 

════════════════════════════════════════════════════

On Petition for Review from the

Court of Appeals for the First District of Texas

════════════════════════════════════════════════════

 

 

Argued on December 3, 2003

 

Chief Justice Phillips delivered the
opinion of the Court.

 

Justice Hecht filed a concurring
opinion in which Justice Wainwright joined.

 

Justice Owen and Justice Schneider did not participate in the decision.

 

 

The
principal issue in this legal malpractice case is whether the jury needed
expert testimony to determine whether the client would have prevailed in an
underlying trial but for its attorneys=
alleged negligence in preparing and trying the case.  The trial court concluded that the jury
needed such guidance to determine causation. 
There being none, the court disregarded the jury=s
findings on causation and rendered judgment that the client take nothing.  Concluding that expert testimony was not
needed because the connection between the attorneys=
negligence and the client=s
loss was obvious, the court of appeals reversed and remanded.  86 S.W.3d 646, 662.  We disagree that the causal connection was
either obvious or a matter within the common understanding of lay persons.
Because we conclude that there is no competent evidence to connect the client=s damages to its attorneys= negligence, we reverse the court of
appeals= judgment
and render judgment that the client take nothing.

I

Mario
Turtur and his two sons, Steve and Chris, are brokers
with Turtur & Associates, Inc. (ATurtur Inc.@), a securities firm.  Dr. Lee McKellar
owns and operates McKellar Ranch, Inc., a cattle
business.  In 1982, Turtur
Inc. agreed with McKellar Ranch to be the exclusive
marketer of two cattle-related investments: (1) donor cow interests and (2)
cattle Aembryo
transplants.@[1]  Although the parties had disagreements about
the investment program, Turtur Inc. continued to
market it through 1984.

In
1985, Turtur Inc. sued McKellar
Ranch and Dr. McKellar, alleging fraud and breach of
contract in state court and claiming damages of about $500,000.  McKellar Ranch
counterclaimed for fraud, misrepresentation, and breach of fiduciary duty.  McKellar Ranch
thereafter sought bankruptcy protection in the United States Bankruptcy Court
for the Eastern District of Texas, staying the state court proceeding.  Turtur Inc.=s claims against McKellar
Ranch were severed and made a part of an adversary proceeding in the bankruptcy
court.[2]  The claims against Dr. McKellar
remained in state court.

Joe
Reynolds, a Houston attorney, and
John Hardy, a Tyler bankruptcy
attorney, initially represented Turtur Inc. in the
bankruptcy court.  After obtaining a
continuance, Reynolds withdrew as counsel, compelling Turtur
Inc. to look for a new lead trial attorney. 
About two months before the rescheduled adversary proceeding was to
begin trial in Tyler, Turtur Inc. hired the Houston
law firm of Alexander & McEvily to represent it,
paying a retainer of $10,000 with the understanding that name partner Tom
Alexander would be lead counsel. Judy Mingledorff, a
new associate at the firm, was assigned to help prepare the case.  Hardy continued to serve as local counsel.

On
June 15, 1987,
two days before the adversary proceeding was to begin, Alexander appeared for a
docket call in Harris County
state district court and announced ready for trial.  The district judge set this case to begin
trial the next day.  On June 17, Mingledorff filed a motion for continuance in the
bankruptcy court based on Alexander=s
assignment for trial in state court.  McKellar Ranch opposed the motion, and the judge denied the
continuance.  The case proceeded to trial
with Mingledorff and Hardy representing Turtur Inc. 

By
order, the court limited the trial of the adversary proceeding to two
days.  Despite the short trial, the court
considered the matter for over two years before rendering its decision on July 20, 1989.  By this time, Alexander no longer represented
Turtur Inc., primarily because of a dispute over
whether Alexander was entitled to keep the $10,000 retainer since he had been
unable to try the adversary proceeding himself.

In
its judgment, the bankruptcy court concluded that both Turtur
Inc. and McKellar Ranch had breached certain parts of
their agreements and that Turtur Inc. had committed
fraud as well.  McKellar
Ranch predominantly prevailed and was awarded net damages of $105,718.80.  In a subsequent settlement, Turtur Inc. paid McKellar $37,500
and dropped its state court claim against Dr. McKellar
individually to set this judgment aside.

Three
months later, Turtur Inc. brought this suit against
Alexander and his firm for malpractice, claiming that their negligence
proximately caused its loss in the bankruptcy court trial.  Turtur Inc. also
alleged breach of fiduciary duty and breach of contract and asserted that it
was entitled to damages of not less than $500,000 and to recoup $45,000 in
attorneys= fees
paid to the defendants.  Thereafter, Turtur Inc. amended its pleadings to claim violations of
several provisions of the Deceptive Trade Practices Act.  See Tex. Bus. & Comm. Code ''
17.41‑.63.  The amended pleadings
also added Mario, Chris, and Steve Turtur as
plaintiffs but did not otherwise identify any claim distinct from those
asserted by Turtur Inc.  The trial court granted special exceptions to
the amended petition and ordered the plaintiff to replead
Ato drop [the Turturs],
Individually, from this lawsuit,@
and Ato
specify the maximum amount of damages being claimed in this lawsuit.@

In
response to these special exceptions, Turtur Inc.
filed its Second Amended Petition alleging that the defendants= negligence and statutory violations
caused it $650,000 in damages. Plaintiffs=
Second Amended Petition also dropped Chris Turtur as
a plaintiff, but left Mario and Steve Turtur as
plaintiffs, asserting for the first time a claim specific to them.  The amended pleading identified Mario and
Steve Turtur as Asuccessors
in interest, d/b/a The Turtur Family Partnership with
respect to their interests in donor cow interests and certain cattle in the
possession of McKellar Ranch, Inc. in the summer of
1987.@  The Turturs alleged
that Alexander and his firm had cost the partnership $3.9 million in lost
profits by negligently authorizing the sale of these cattle in 1987.  Concluding that the partnership=s claim was barred by limitations, the
trial court granted defendants=
motion for partial summary judgment, leaving only Turtur
Inc.=s legal
malpractice and DTPA claims for trial.

At
trial, the jury found in favor of Turtur Inc. on both
theories, awarding over $3 million in damages. 
The trial court denied Turtur Inc.=s motion to amend its petition to
conform to the award, but it granted Alexander and his firm=s motion for judgment notwithstanding
the verdict on the grounds that plaintiff had presented no evidence of
causation or damages.  Turtur Inc., along with Mario and Steve Turtur,
appealed the trial court=s
take-nothing judgment.

            The
court of appeals affirmed the summary judgment against the Turturs
on the partnership claim, but it reversed the take-nothing judgment for
Alexander and his firm on the legal malpractice and DTPA claims, remanding to
the trial court with instructions to conform the jury award of damages to Turtur Inc.=s
pleadings.  86 S.W.3d at 662.  Both Alexander and his firm and the Turturs petitioned this Court for review.  

II

To
prevail on a legal malpractice claim, a plaintiff must show Athat (1) the attorney owed the
plaintiff a duty, (2) the attorney breached that duty, (3) the breach
proximately caused the plaintiff's injuries, and (4) damages occurred.@ 
Peeler v. Hughes & Luce, 909 S.W.2d 494, 496 (Tex.
1995).  When the plaintiff=s allegation is that some failure on
the attorney=s part
caused an adverse result in prior litigation, the plaintiff must produce
evidence from which a jury may reasonably infer that the attorney=s conduct caused the damages
alleged.  Haynes & Boone v. Bowser
Bouldin, Ltd., 896 S.W.2d 179, 181 (Tex.
1995).  To prevail on a claim under the
DTPA, a plaintiff must prove that a violation of the statute was a producing
cause of the injury.  Tex. Bus. & Comm. Code '
17.50(a).  While different, both
producing cause and proximate cause require proof of causation in fact.  Union Pump Co. v. Allbritton,
898 S.W.2d 773, 775 (Tex.
1995).  In this Court,  Alexander and his firm contest only the jury=s findings of causation and damages.

The
court of appeals held that the evidence of causation was legally sufficient,
parsing through these facts to establish that, but for the negligence of
Alexander and his firm, the result in the adversary proceeding would have been
more favorable to Turtur Inc.:

 

! Alexander, an experienced civil trial
lawyer, agreed to personally try and oversee the preparation of the Turturs=
case but did not follow through with his agreement.

 

! Mingledorff,
a new associate and former assistant district attorney with no civil trial or
bankruptcy court experience, instead acted as lead trial attorney.

 

! At the adversary proceeding, Mingledorf called only two witnesses, Mario and Chris Turtur.  Mingledorff did not adequately prepare Mario for his
testimony.  She did not call Steve Turtur, although he was available and was the Turtur most knowledgeable about the dealings with McKellar.

 

! Mingledorff=s direct examination of Mario Turtur covers only 16 pages in the reporter=s record whereas his testimony at the
malpractice trial runs 1318 pages.  Steve
Turtur=s
testimony at the malpractice trial covers 505 pages.

 

! Mingledorff did
not review some documents produced by McKellar prior
to trial, which the Turturs=
expert testified was negligence.  The
expert also testified that Alexander was negligent in turning over a complex
bankruptcy matter in a civil case to Mingledorff, who
had been prosecuting criminal cases for the past several years.

 

! Mingledorff
did not depose or call as witnesses at the adversary proceeding at least 10
other witnesses who could have given relevant, favorable testimony for the Turturs. The Turturs= expert agreed that this was negligence
to the extent that these witnesses had relevant information that may have been
critical to proving the Turturs= claims.

 

! Mingledorff
did not know how to cross-examine a deposition and as a result may have failed to
read into evidence relevant testimony from a deposition. 

 

! Mingledorff
was not prepared to try the adversary proceeding because she never expected to
try the case.

 

86 S.W.3d at
654-59.  Based on this evidence, the
court of appeals remanded the case for the trial court to render judgment for Turtur Inc.  Id.
at 662 & n.11.  The court
subsequently overruled Alexander and his firm=s
motion for rehearing en banc, with two justices dissenting.  Id.
at 662 (Taft & Radack, JJ. dissenting).

Alexander
and his firm argue here that the facts recited by the court of appeals are not
evidence that they caused Turtur Inc. to lose in the
adversary proceeding.  They note that the
jury was asked to decide a complicated and very subjective causation
issue:  whether, in reasonable
probability, a bankruptcy judge would have decided the underlying adversary
proceeding differently if Alexander had personally tried the case or if he or Mingledorff had introduced other evidence.  To understand whether any of the omitted
evidence would have made a difference, Alexander and his firm submit, the jury
required some guidance about how the omitted evidence was different from, and
more compelling than, the evidence and testimony presented at the adversary
proceeding.  Moreover, since the
bankruptcy judge allotted only two days for trial, both sides had to make
difficult choices about what evidence to offer; lay jurors might not appreciate
the legal considerations in making these selections.  Given these circumstances, Alexander and his firm
assert that the jury was not competent to decide, without resort to expert
testimony, whether the result of the underlying adversary proceeding would have
been different but for the alleged malpractice.

Turtur Inc. responds that the jury did not need any expert
help because causation was obvious. 
While the underlying commercial case was complex, that was precisely why
Turtur Inc. hired Alexander.  Instead of an experienced and successful
litigator, it ended up with a new associate with no civil litigation experience
who, through a lack of supervision and her own inexperience, made a series of
mistakes in the preparation and trial of its case.  Turtur Inc.
concludes that the sheer number of errors made by counsel in the preparation
and trial of the underlying adversary proceeding make causation obvious here.

Breach
of the standard of care and causation are separate inquiries, however, and an
abundance of evidence as to one cannot substitute for a deficiency of evidence
as to the other.  Thus, even when negligence
is admitted, causation is not presumed.  Haynes
& Boone, 896 S.W.2d at 181-82.  
Moreover, the trier of fact must have some
basis for understanding the causal link between the attorney=s negligence and the client=s harm. 
Id., 896
S.W.2d at 181; see also 5 Ronald
E. Mallen & Jeffrey M. Smith, Legal
Malpractice ' 33.16 at
116 (5th ed. 2000).  In some cases the
client=s
testimony may provide this link, but in others the connection may be beyond the
jury=s common
understanding and require expert testimony. 
See Tex. R. Evid. 702 (Testimony by
Experts).  As one authority observes:

 

A
failure of proof can result if expert testimony is limited to whether the
defendant violated the standard of care. 
Proof of causation of injury often requires expert testimony concerning
what the attorney should have done under the circumstances.  The expert testimony must be tied to the
specific conduct that is in issue.

 

5 Mallen & Smith ' 33.17 at 138-39.

The
court of appeals cited two cases, Delp v.
Douglas, 948 S.W.2d 483, 495 (Tex. App.BFort
Worth 1997), rev'd on other grounds,
987 S.W.2d 879 (Tex. 1999), and Streber v.
Hunter, 221 F.3d 701, 726 (5th Cir. 2000), as examples of malpractice
actions that did not require expert testimony on causation.  86 S.W.3d at 652.  Neither case, however, involved trial
malpractice.  In both cases the clients
themselves were the key decisionmakers, relying upon
their attorney=s advice
with unfortunate consequences.  Under
these circumstances, the courts in Delp and Streber found sufficient the clients= testimony that, because of their
lawyers= bad
advice, they made the decisions and took the actions that resulted in their
injuries.  See Delp,
948 S.W.2d at 495-96; Streber, 221 F.3d at
726-27.  In contrast, the decisionmaker here was the bankruptcy judge, who quite
properly was not asked to, and did not, testify as to how he might have ruled
if the case had been presented differently. 
Without expert testimony, the jury had no direct evidence explaining the
legal significance of the omitted evidence.

Legal
malpractice may include an attorney's failure to exercise ordinary care in
preparing, managing, and presenting litigation. 
See Zidell v. Bird, 692 S.W.2d 550, 553
(Tex. App.BAustin
1985, no writ).  But A[d]ecisions
of which witnesses to call, what testimony to obtain or when to cross-examine
almost invariably are matters of judgment.@  4
Mallen & Smith '
30.39 at 561.  As such, the wisdom and
consequences of these kinds of tactical choices made during litigation are
generally matters beyond the ken of most jurors.  And when the causal link is beyond the jury=s common understanding, expert
testimony is necessary.  See Arce v. Burrow, 958 S.W.2d 239, 252 (Tex. App.BHouston [14th Dist.] 1997), aff=d
in part, rev=d in part
on other grounds, 997 S.W.2d 229 (Tex. 1999); Delp,
948 S.W.2d at 495; see also Kranis v. Scott,
178 F. Supp.2d 330, 334 (E.D.N.Y. 2002) (expert testimony on causation required
unless connection within factfinder=s ordinary experience); Samuel v. Hepworth, Nungester & Lezamiz, Inc., 996 P.2d 303, 308 (Idaho 2000) (expert
testimony on proximate cause is required when the issue is not one that lay
persons are competent to make); Dean v. Tucker, 517 N.W.2d 835, 837
(Mich. Ct. App. 1994) (expert witness usually required to establish causation);
Sommers v. McKinney, 670 A.2d 99, 104
(N.J. Super. Ct. App. Div. 1996) (expert testimony usually required when
adequacy of an investigation or soundness of an opinion at issue); Sanders
v. Smith, 496 P.2d 1102, 1105 (N.M. Ct. App. 1972) (expert needed when
inquiry involves Acomplexities
of trial practice@); Meyer
v. Mulligan, 889 P.2d 509, 516 (Wyo. 1995) (expert testimony on proximate
cause is required when the issue is not one that lay persons are competent to
make); but see Whitley v. Chamouris, 574
S.E.2d 251, 252-53 (Va. 2003) (expert testimony not needed when malpractice
action involves Acase
within a case@).  

In
another case involving allegations of trial malpractice and omitted evidence,
the Oregon Supreme Court observed:

 

Since plaintiff, to
prevail in this [malpractice] case, had to convince the trier
of fact [in the malpractice suit] . . . that the result in the earlier trial
would have been favorable to her had [her lawyer] introduced the two documents
in question, we know of no other way in which the jury could have been guided
in determining the [causation] issue than the presentation of opinion by
properly qualified experts.

 

Shields v. Campbell,
559 P.2d 1275, 1280 (Or. 1977).  And the
Supreme Court of Maine has stated that without competent expert testimony in a
trial malpractice case demonstrating that the result of the underlying
proceeding would have been different but for the alleged negligence, Athe factfinder
would be compelled to speculate as to proximate causation.@ 
Corey v. Norman,
Hanson & DeTroy, 742 A.2d 933, 940 (Me.
1999).  Likewise, we conclude on this
record that the errors allegedly made by Mingledorff
in the preparation and trial of the admittedly complex, yet truncated,
underlying proceeding were not so obviously tied to the adverse result as to
obviate the need for expert testimony. 
We therefore conclude that the court of appeals erred in holding that
the jury was competent to determine causation in either negligence or violation
of the DTPA without expert guidance in this case.

III

Turtur Inc. argues, in the alternative, that it submitted
expert testimony on causation through Steve Peterson, an attorney who testified
on the standard of care and gave his opinion about the negligence of Alexander
and Mingledorff. 
Peterson testified that Alexander was negligent in failing to
participate in the case and supervise Mingledorff and
that he and his firm were negligent in turning the complex bankruptcy
proceeding over to Mingledorff.  Peterson also testified that Alexander should
have advised the Turturs and Mingledorff
as soon as he knew that he had conflicting trial settings and that Mingledorff would likely have to try the case.  Peterson testified that Mingledorff
was negligent in failing to review certain documents produced by McKellar before the start of trial, was negligent in
failing to object to hearsay during trial, and was negligent in preparing the
pretrial order and in listing only those witnesses listed by McKellar.  Peterson
further testified that if other witnesses had relevant information critical to
proving Turtur Inc.=s
claim, they should have been listed and called. 
Near the end of his testimony on direct, Peterson was asked if he could
comment Aas to
whether or not the failure to present this evidence caused Judge Abel [the
bankruptcy judge] to make his findings?@

The
court of appeals quoted this part of Peterson=s
answer in its opinion:

 

I can comment that,
in my opinion, the evidence that was offered and admitted at trial caused Judge
Able to make the decision that he made.

 

86 S.W.3d at
659.  The court of appeals did not
explain what it believed the significance of this testimony to be.  All we glean from it is that Peterson
believed the bankruptcy judge decided the case on the evidence before him,
praiseworthy in a judge but hardly probative on the issue of attorney
malpractice.  Moreover, the court of
appeals failed to quote a second sentence in which Peterson disclaimed
knowledge of any other evidence that might have changed the judge=s decision.  Peterson=s
full response to the question was:

 

I can comment that,
in my opinion, the evidence that was offered and admitted at trial caused Judge
Able to make the decision that he made.  I
can=t tell you
what other evidence might have been out there that might have resulted in a
different decision.

 

(emphasis
added).  Clearly, Peterson=s testimony does not support the
inference that, had omitted evidence been presented, there would have been a
different result in the underlying trial. 

IV

In
their own petition, the Turturs contend that the
court of appeals erred in affirming the summary judgment barring the Turtur Family Partnership=s
claim against Alexander and his firm. 
They assert that Alexander wrongfully induced their partnership to sell
34 head of genetically enhanced cattle at Afire-sale
prices@ by
representing that any losses from the sale would be resolved in the state court
action pending against Dr. McKellar.  The sale was authorized on October 5, 1987, and the
partnership=s claim
was added in Plaintiffs=
Second Amended Petition filed on August 16, 1991. 
The trial court granted summary judgment on limitations, and the court
of appeals affirmed, but the Turturs argue that the
claim should relate back to the filing date of the original petition because
that petition broadly Acomplained
of the defendants=
mishandling of the adversarial proceeding, which covered the wrongful sale of
the cattle.@

An
original pleading tolls the limitation period for claims asserted in
subsequent, amended pleadings as long as the amended pleading does not allege a
wholly new, distinct, or different transaction. 
See Tex. Civ. Prac. & Rem. Code ' 16.068.  Turtur Inc.=s Original Petition sought the recovery
of damages caused by Alexander and his firm=s
negligent handling of its adversary proceeding in the bankruptcy court, styled McKellar Ranch, Inc. v. Turtur
& Associates, Inc.  The first
mention of the partnership=s
claim, these cattle or the adversary proceeding involving them appears in the
Second Amended Petition, which valued the partnership=s
loss at approximately eight times that of the malpractice claim asserted by Turtur Inc. in the Original Petition.  Ordinarily, an amended pleading adding a new
party does not relate back to the original pleading.  See Koch Oil Co. v. Wilber, 895 S.W.2d
854, 863 (Tex. App.B Beaumont
1995, writ denied); Davis v. Outdoor Equip. Co., 551 S.W.2d 72, 73 (Tex.
Civ. App.BHouston
[1st Dist.] 1977, no writ).  Moreover, when
the amended petition sets up a distinct and different claim from that asserted
in the previous petitions, the new claim does not relate back.  See Dearing v. Lawrence, 156 S.W.2d
1019, 1020-21 (Tex. Civ. App.BTexarkana
1941, writ ref'd). 
We therefore agree with the court of appeals that Turtur
Inc.=s claim
against Alexander and his firm for mishandling its adversary proceeding in
bankruptcy court alleges a transaction which is distinct and different from the
Turtur Family Partnership=s
subsequent complaint in the Second Amended Petition that Alexander negligently
induced it to sell its cattle at Afire
sale prices.@ 

The
Turturs on behalf of the partnership also argue that
the court of appeals erred in affirming the summary judgment because the
four-year statute of limitations applicable to fraud claims should have been
applied.   The Turturs,
however, did not make this argument in the court of appeals.  Accordingly, it has been waived.  See Fort Bend County Drainage Dist. v. Sbrusch, 818 S.W.2d 392, 395 (Tex.
1991); Gray‑Taylor, Inc. v. Tennessee,
587 S.W.2d 668, 671 (Tex. 1979).

* * * * *

We
affirm that part of the court of appeals=
judgment upholding the summary judgment against the Turturs
on their partnership=s
claim.  We reverse that part of the court=s judgment remanding the malpractice
claim for rendition of judgment and render judgment that Turtur
Inc. take nothing against Alexander and his firm.

 

____________________________________

Thomas R.
Phillips

Chief Justice

 

 

 

Opinion delivered:      August 27, 2004

 

 











[1]  The purchaser of a Adonor cow interest@ bought a half interest in a female
Red Brahman donor cow which was periodically super-ovulated to produce multiple
eggs; the eggs were then washed from the donor cow=s uterus, fertilized, and transferred
to a Arecipient cow.@ 
The investor in this program was entitled to half the calves produced
from the donor cow.  The purchaser of an Aembryo@ interest bought a Aunit@ of ten implanted embryos, paying for
transplant work to the recipient cows. 
The investment worked as a tax shelter because the investor could
immediately claim a deduction for these transplant expenses.





[2]  Turtur Inc. filed a
proof of claim in the bankruptcy case for $479,631.20, the amount sought in the
state court action, against McKellar Ranch.  McKellar Ranch
filed an objection to the allowance of Turtur Inc.=s claim and asserted counterclaims
tracking those asserted by McKellar Ranch in state
court.  At that point the dispute between
Turtur Inc. and McKellar
Ranch became an adversary proceeding in the McKellar
Ranch bankruptcy case.