TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN





ON MOTION FOR REHEARING








NO. 03-03-00575-CV






Frank L. Connolly, Appellant


v.


Neal Smith; Pye, Dobbs & Berry, P.C.; David Dobbs as Representative of the Estate of

J. Robert Dobbs, Jr.; and John Berry, Appellees







FROM THE DISTRICT COURT OF CALDWELL COUNTY, 274TH JUDICIAL DISTRICT

NO. 00-O-444-A, HONORABLE C. FRED SHANNON, JR., JUDGE PRESIDING





M E M O R A N D U M O P I N I O N




 To answer questions raised in the motions for rehearing, we withdraw our opinion
and judgment of July 15, 2004, and substitute this opinion which reaches the same result. We
overrule the motions for rehearing.

 Appellant Frank L. Connolly challenges the trial court's grant of appellees' traditional
and no-evidence summary judgment motion denying his lawsuit against his former attorney Neal
Smith, his attorney's law firm Pye, Dobbs & Berry, P.C. (the law firm), named partner John Berry,
and the representatives of the estate of named partner Robert Dobbs, Jr. (Dobbs). Connolly contends
that he presented competent summary judgment evidence that appellees' negligence was a proximate
cause of his damages and that the trial court erred by applying the statute of limitations to defeat his
claims against appellees Dobbs and Berry individually. We will affirm the summary judgment as
to Dobbs and Berry, but will reverse the summary judgment in favor of the law firm and Smith.


FACTUAL AND PROCEDURAL BACKGROUND


 In the Spring of 1998, Connolly, who was 87 years old, decided to have some estate
planning documents created and to buy some insurance products from Richard Yager. Richard
Yager referred Connolly to Neal Smith, an attorney working for the firm of Pye, Dobbs & Berry,
P.C. (1) Smith relied on a thirty-minute telephone interview with Connolly and information supplied
by Yager to draft the estate planning documents, which were executed in May 1998. 

 In June 1999, Yager contacted Smith and requested that he assist in the creation of
a limited liability corporation to be named Legacy Endeavors, L.L.C. Smith was told that Connolly,
Yager, and Yager's wife planned to use the L.L.C. to invest money in the stock market and that the
profits would be divided. Connolly would contribute the initial money and Yager and his wife
would manage the funds and take a fifty-percent commission on all profits. Smith prepared and filed
articles of organization for the L.L.C. as instructed by Yager. Smith did not consult with Connolly
about the creation of the L.L.C. or its management. In a June 28, 1999 letter addressed to Yager,
Smith reported that the articles had been filed and that Yager would be able to open a bank account
for the L.L.C. as soon as he received a tax identification number. Connolly was not copied on the
letter.

 In February 2000, Yager took Connolly to meet with Smith. Connolly wanted Smith
to amend his estate planning documents to include a variety of charitable donations. Smith testified
in a deposition that they also discussed the ownership arrangement in the L.L.C. and that they needed
to "fix" it. Connolly does not recall discussing the L.L.C. with Smith, and no changes were ever
made to the L.L.C.

 On October 10, 2000, Smith sent another letter to Yager enclosing other
organizational documents for the L.L.C., but explaining to Yager that the effect of the arrangement
between Yager and Connolly "would be that Mr. Connolly was making large gifts" to Yager and his
wife. Smith suggested in the letter that an investment agreement would be the best way to structure
the business relationship between Yager and Connolly and enclosed a copy of an investment
agreement. Smith did not send a copy of this letter to Connolly.

 In the fall of 2000, Connolly became suspicious of Yager when he had difficulty
getting Yager to withdraw money from the L.L.C.'s bank account. Connolly engaged a new attorney
and soon discovered that several annuities that Yager had sold him had been surrendered. On
October 30, 2000, Connolly's new attorney sent a series of letters revoking the power of attorney
given to Yager. Connolly eventually determined that over $700,000 of his assets had been funneled
through the L.L.C.'s bank account and could not be accounted for.

 In 2001, Connolly filed a lawsuit against the Yagers, Smith, and the law firm; the suit
included a malpractice claim against Smith and his law firm. He added the law partners in Smith's
firm, Berry and Dobbs, as individual defendants on November 7, 2002. Defendants Smith, Berry,
Dobbs, and the law firm filed a motion for summary judgment contending that Connolly's claims
against Dobbs and Berry were not filed within the two-year statute of limitations, and that Connolly
had presented no evidence that Smith or the law firm's actions "were the proximate cause or
producing cause of any of the Plaintiff's damages." Summary judgment was granted by the trial
court. The record reflects that this suit was then severed from the claims against the Yagers, making
it a final judgment. This appeal followed.


DISCUSSION


Statute of Limitations

 Connolly first contends that the trial court erred by granting summary judgment in
favor of Dobbs and Berry on statute of limitations grounds. Legal malpractice claims are governed
by a two-year statute of limitations. Apex Towing Co. v. Tolin, 41 S.W.3d at 118, 120 (Tex. 2001). 
The limitations period generally begins to run when the cause of action accrues. Id. A cause of
action accrues either at the time facts have come into existence that authorize a claimant to seek a
judicial remedy or when the claimant discovers those facts or should have discovered them through
the exercise of reasonable care and diligence. Id.; Johnson & Higgins, Inc. v. Kenneco Energy, Inc.,
962 S.W.2d 507, 514 (Tex. 1998); Willis v. Maverick, 760 S.W.2d 642, 644-46 (Tex. 1988).

 The parties agree that the last day of the two-year statute of limitations was on
October 30, 2002. Dobbs and Berry were not added to the lawsuit until November 7, 2002. 
Connolly contends, however, that Dobbs and Berry are the alter egos of the law firm Pye, Dobbs &
Berry, P.C. and that the statute of limitations was tolled when suit was brought against the firm. See
Mathews Const. Co., Inc. v. Rosen, 796 S.W.2d 692, 694 (Tex. 1990); Gentry v. Credit Plan Corp.,
528 S.W.2d 571, 575 (Tex. 1975).

 We disregard the corporate entity under an alter ego theory when there exists such
unity between a corporation and an individual that the corporation ceases to be separate and when
holding only the corporation liable would promote injustice. See Mancorp, Inc. v. Culpepper, 802
S.W.2d 226, 228 (Tex. 1990). We consider the total dealings of the corporation and the individual
to determine whether the "corporate entity is owned or controlled by an individual who operates the
company in a manner that is indistinguishable from his personal affairs and in a manner calculated
to mislead those dealing with him to their detriment." Id.; Goldstein v. Mortenson, 113 S.W.3d 769,
781 (Tex. App.--Austin 2003, no pet.). 

 The supreme court has explained the burden of proof that applies to a summary
judgment motion raising the affirmative defense of limitations:


A defendant moving for summary judgment on the affirmative defense of limitations
has the burden to conclusively establish that defense. Thus, the defendant must (1)
conclusively prove when the cause of action accrued, and (2) negate the discovery
rule, if it applies and has been pleaded or otherwise raised, by proving as a matter of
law that there is no genuine issue of material fact about when the plaintiff discovered,
or in the exercise of reasonable diligence should have discovered the nature of its
injury. If the movant establishes that the statute of limitations bars the action, the
nonmovant must then adduce summary judgment proof raising a fact issue in
avoidance of the statute of limitations. 



KPMG Peat Marwick v. Harris County Hous. Fin. Corp., 988 S.W.2d 746, 748 (Tex. 1999).

 Here, there is no dispute between the parties as to when the cause of action accrued
or that Dobbs and Berry were added to the suit outside of the period of limitations. We therefore
find that Dobbs and Berry established that the statute of limitations barred the suit against them. See
KPMG Peat Marwick, 988 S.W.2d at 748. It was then incumbent upon Connolly to adduce summary
judgment evidence raising a fact issue supporting his alter ego theory. See id. at 749-50 (non-movant
raising fraudulent concealment defense to statute of limitations must provide summary judgment
evidence on each element of defense). Connolly alleged only that the law firm was undercapitalized
and underinsured. Otherwise, Dobbs and Berry were simply principals in a law firm organized as
a professional corporation. Connolly presented no evidence that tended to show that Dobbs and
Berry owned or controlled the law firm in a manner indistinguishable from their personal affairs or
that Connolly was misled in any way regarding the structure of the law firm. See Mancorp, Inc., 802
S.W.2d at 228. Because Connolly failed to produce summary judgment evidence raising a fact issue
in support of his alter ego theory, we affirm the summary judgment in favor of appellees Dobbs and
Berry.


Causation

 Summary judgment was granted in favor of all appellees on the grounds that there
was no evidence presented to the trial court that appellees' negligence was the producing cause or
proximate cause of Connolly's damages. (2) In general, a party seeking a no-evidence summary
judgment must assert that no evidence exists as to one or more of the essential elements of the
nonmovant's claims on which it would have the burden of proof at trial. Holmstrom v. Lee, 26
S.W.3d 526, 530 (Tex. App.--Austin 2000, no pet.). Once the movant specifies the elements on
which there is no evidence, the burden shifts to the nonmovant to raise a fact issue on the challenged
elements. Tex. R. Civ. P. 166a(i). To raise a genuine issue of material fact, the nonmovant must
set forth more than a scintilla of probative evidence as to an essential element of each claim on
which the nonmovant would have the burden of proof at trial. See Merrell Dow Pharms., Inc. v.
Havner, 953 S.W.2d 706, 711 (Tex. 1997); Holmstrom, 26 S.W.3d at 530. When the evidence
supporting a finding rises to a level that would enable reasonable, fair-minded persons to differ in
their conclusions, more than a scintilla of evidence exists. Havner, 953 S.W.2d at 711.

 Connolly argues that the evidence he presented raised an issue of material fact as to
causation. Alternatively, he contends that appellees' motion for summary judgment was legally
insufficient to support the trial court's summary judgment because it was pleaded in such a way as
to limit the pleading to a theory that appellees' actions were the sole cause of Connolly's damages. Connolly bases his alternative argument on the supreme court's opinion in Lewis
Construction, Inc. v. Harrison, 70 S.W.3d 778, 784 (Tex. 2001). This opinion makes a distinction
between "a proximate cause" and "the proximate cause." See id. ("the question here is whether an
act by LLC was 'a' proximate cause, not 'the' proximate cause"). Connolly notes that appellees'
motion for summary judgment asserted that appellees' actions were not "the proximate or producing
cause of any of [Connolly's] damages." (Emphasis added.) He contends that the pleading's use of
"the" precludes a summary judgment on the theory that appellees' actions were only "a" proximate
or producing cause. See McConnell v. Southside Ind. Sch. Dist., 858 S.W.2d 337, 342 (Tex. 1993)
(court may not uphold summary judgment on grounds not expressly set forth in motion). The
discussion of "a" and "the" in Harrison, however, does not lead to Connolly's conclusion. The
supreme court explained in its opinion that "more than one act may be the proximate cause of the
same injury." Id. (emphasis added). Not only does the supreme court itself use "a" and "the"
interchangeably in this context, but the very definition of "proximate cause" anticipates that more
than one party's actions may have contributed to the damages. See Harrison, 70 S.W.3d at 784. We
therefore reject Connolly's hyper-technical reading of appellees' pleadings.

 In considering Connolly's contention that he raised a genuine issue of material fact
as to causation, we review Connolly's evidence in the light most favorable to him and make every
inference and resolve all doubts in his favor. See Centeq Realty, Inc. v. Siegler, 899 S.W.2d 195,
197 (Tex. 1995); Holmstrom, 26 S.W.3d at 530. The primary evidence supplied by Connolly in
support of causation was the affidavit of Connolly himself and the supplementary affidavit of
attorney Alvin J. Golden. Golden's affidavit details the arrangement between Yager and Connolly,
describes Smith's contacts with the parties and the work he completed, and concludes that Smith was
negligent in failing to advise Connolly with regard to the formation of the L.L.C. and the investment
agreement. Golden then states:


Such negligence was a proximate cause of Mr. Connolly's damages in that it placed
Mr. Yager in absolute control of all of Mr. Connolly's assets.


In my opinion, Mr. Smith's failure to perform his duties toward Mr. Connolly as
discussed above was negligence and a proximate cause of the losses incurred through
the L.L.C. . . . If Mr. Smith had performed his duty in advising Mr. Connolly in
regard to the estate planning documents or the establishment of Legacy Endeavors,
L.L.C., Mr. Connolly would have in all probability, based upon my experience, taken
reasonable precautions to protect the assets from Mr. Yager's scheme and the losses
incurred through the L.L.C. would thereby have been averted.



Connolly's affidavit also details his contact with Yager and Smith. He then discusses Smith's failure
to advise him concerning the L.L.C.:


If Neal Smith had advised me that the effect of the L.L.C. as written was that I would
be transferring my money to Richard and Sarah Yager, I would not have authorized
him to create it or to file it and would have taken steps to prevent that and to protect
my assets from the Yagers. I do not even know what an L.L.C. is. If Neal Smith had
informed me that the L.L.C. could be used by the Yagers to transfer large amounts
(over $700,000) of my cashed in annuity proceeds to Mr. Yager, and that Yager had
all the checks and could control the account, I would not have permitted it.



Appellees discount both affidavits as conclusory. See Burrow v. Arce, 997 S.W.2d 229, 236 (Tex.
1999) (conclusory expert affidavit is incompetent summary judgment evidence); Krishnan v. Law
Offices of Henrichson, 83 S.W.3d 295, 299 (Tex. App.--Corpus Christi 2002, pet. denied) (affidavit
based on subjective belief is conclusory). 

 Although Golden gave a detailed and well supported opinion on the negligence issue,
his affidavit lacks any basis for his conclusion that Connolly would have acted differently had he
been advised of the consequences of his financial arrangements with Yager. As in Burrows, Golden
relies only on his "personal experience" to inform his opinion of what Connolly would have done. 
His affidavit is therefore conclusory and amounts to no evidence at all. See Burrows, 997 S.W.2d
at 236.

 Goldon's expert opinion, however, was not required to prove causation in this case. 
Although expert testimony is often necessary to prove the element of causation in a legal malpractice
case, courts have declined to require such testimony when the causal relationship between the
attorney's negligence and the loss is one that the trier of fact can resolve as a matter of common
knowledge. Delp v. Douglas, 948 S.W.2d 483, 495 (Tex. App.--Fort Worth 1997), rev'd on other
grounds, 987 S.W.2d 879 (Tex. 1999); see also Streber v. Hunter, 221 F.3d 701, 726 (5th Cir. 2000); 
Turter & Assocs. v. Alexander, 86 S.W.3d 646, 653 (Tex. App.--Houston [1st. Dist.] 2001, pets.
granted). Here, the determination of whether Smith's negligence caused Connolly's losses did not
require guidance through complex legal doctrine; it was a simple question of fact as to whether
Connolly would have followed competent advice. It is therefore permissible to look to Connolly's
affidavit for evidence of causation.

 Connolly clearly states that, if Smith had advised him regarding the effect of the
L.L.C., he would not have authorized its creation. This is not Connolly's subjective belief of the
motivations of another, but a statement of what Connolly personally would have done if Smith had
competently advised him. See Trico Techs. Corp. v. Montiel, 949 S.W.2d 308, 310 (Tex. 1997) (self
serving affidavit stating what that person would have done is competent summary judgment
evidence). Furthermore, to the extent that Connolly did not discuss the specific steps he would have
taken to prevent Yager from taking his money, Smith himself explained in his letter to Yager that
an investment agreement would have accomplished the goals of the business relationship without
vesting in Richard and Sarah Yager majority control of the L.L.C. and ownership of Connolly's
assets.

 The evidence presented by Connolly showing that he would have acted differently
had he been competently advised by Smith, coupled with Smith's own advice to Yager suggesting
the use of an investment agreement, creates a genuine issue of material fact as to whether Smith's
negligence was a proximate cause of Connolly's losses. We therefore reverse the summary judgment
in favor of Smith and the law firm and remand for further proceedings.


CONCLUSION


 Because Connolly failed to raise a genuine issue of material fact in support of his alter
ego theory, we affirm the summary judgment in favor of Dobbs and Berry. Because Connolly did
provide some evidence that Smith's negligence caused Connolly's losses, we reverse the summary
judgment in favor of Smith and the law firm and remand for further proceedings.



 

 Bea Ann Smith, Justice

Before Justices Kidd, B. A. Smith and Pemberton

Affirmed in Part; Reversed and Remanded in Part

Filed: August 26, 2004

1. Yager had referred approximately fifteen clients to the firm. The firm charged these clients
a flat fee of $600 to prepare standard estate planning documents.
2. Appellees concede that Connolly presented sufficient evidence of negligence to avoid
summary judgment on that issue.