**JOHN MASEK CORPORATION and John A. Masek, Appellants,**

v.

**Marvin DAVIS and Bilo Zarif, Appellees.**

**No. 01–92–00135–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Nov. 19, 1992.

Rehearing Denied March 11, 1993.

---

Duane H. Guy, Houston, for appellants.

W. Wendell Hall, San Antonio, for appellees.

Before OLIVER–PARROTT, C.J., and WILSON and O'CONNOR, JJ.

## OPINION

O'CONNOR, Justice.

This Court is asked whether the trial court erred in entering a judgment non obstante veredicto ordering the plaintiff take nothing. We find it did not and affirm.

### Fact summary

The plaintiffs, John Masek and John Masek Corporation (Masek Corp.), sued Marvin Davis, Marvin Davis Corporation (Davis Corp.), John Aylsworth, and Bilo Zarif for breach of fiduciary duty, tortious interference with contract, civil conspiracy, and piercing the corporate veil. The plaintiffs' claims relate to the liquidation of Davis Trading Company (Davis Trading).

Masek and Davis had a long history of professional and personal relationships. In 1986, Davis, Masek, Glen Natiello, and Gerald Gray created Davis Trading. Each of the four formed a Subchapter "S" corporation to shield themselves from any personal liability that might arise from the affairs of Davis Trading. The four individuals formed Davis Trading with their Subchapter "S" corporations as the members. Davis Trading was a high-risk company whose financial outlook was dependent upon two types of speculative transactions: (1) cash market transactions, which involved the future acquisition, transport, and/or delivery of refined petroleum products; and (2) trading of futures contracts for crude oil and refined petroleum products on the New York Mercantile Exchange.

Davis Corp., Davis' Subchapter "S" corporation, contributed $10,000,000 to Davis Trading (all of Davis Trading's capital), assumed financial responsibility for all of Davis Trading's losses, and owned 46 percent of the shares of Davis Trading. Davis Corp. also paid Natiello a $1,000,000 bonus. Because Davis Corp. was the only entity in Davis Trading that contributed money and the only one that bore any financial risk, the partnership agreement forming Davis Trading provided Davis Corp. had the contractual right to withdraw its capital from Davis Trading, liquidate the business of Davis Trading at any time, and remove Masek as the managing partner. Each partner's employment agreement repeated the provisions giving Davis Corp. unilateral rights to liquidate the business. Natiello's employment agreement stated, "Davis Corp. shall have the absolute discretion and authority to terminate [Natiello's] employment with Davis Trading or discontinue the business of Davis Trading Company at any time for any reason." All the parties are in agreement the contract granted Davis Corp. the right to liquidate.

After Davis Trading was formed, Davis sent Aylsworth, a Davis Corp. vice-president and accountant, and Bilo Zarif, Davis' son-in-law, to survey Davis Trading. Both Aylsworth and Zarif acknowledged they were at Davis Trading because Davis asked them to be there. Aylsworth was there as an accountant, and Zarif was there to learn about Davis Trading.

From the beginning, the partners disagreed how the company should be run. The financial reporting and accounting for the company was behind, and it was difficult to reduce the backlog, because of the high volume of transactions. In August 1986, Aylsworth expressed his concern and suggested the traders slow down the volume of trades, but they did not. As a result of the backlog, it was impossible to

get an accurate reading of the company's financial situation.

In October 1986, Aylsworth tried once more to get the traders to reduce the number of trades. Aylsworth made the suggestion after Chase Manhattan, Davis Trading's bank, expressed concern over the possible "churning" of the accounts and the liberties taken with the credit limit. In January 1987, the partners met, and Davis told the traders to reduce the volume of trades to give the accounting department an opportunity to catch up.

According to the plaintiffs, there were rumors Zarif was not at Davis Trading just to observe. He told one of the employees he was planning to kick Masek out and remove Natiello. Later, Masek told Zarif he was not qualified to represent Davis Corp. in Davis Trading's transactions and asked him to leave. Zarif told Davis that Masek had asked him not to return. Masek alleges Davis offered him $1,000,000 for his interest in Davis Trading, or he would shut down the company.

In February 1987, Davis Trading posted a $1,000,000 loss, and Davis decided to exercise Davis Corp.'s option under the partnership agreement to withdraw its capital. Aylsworth was sent by Davis to tell the other partners. Davis did not choose to exercise its option to liquidate the company, but it was scheduled to withdraw its $10,000,000 in capital and give Masek and Natiello a chance to sell the company or find another partner. In April 1987, Davis Trading was liquidated after Masek and Natiello chose not to continue running the company. Masek gave his written consent to liquidate.

The trial court directed a verdict in favor of Aylsworth on the plaintiffs' tortious interference claim and agency claim and in favor of Davis on the plaintiffs' claim for piercing the corporate veil. The trial court also declined to submit the conspiracy claim to the jury. Following a verdict against Davis and Zarif, but not Davis Corp., the trial court entered judgment notwithstanding the verdict in favor of Davis and Zarif.

In this appeal, the plaintiffs claim Davis breached fiduciary duties by withdrawing capital and winding down Davis Trading.

## The JNOV

■ A motion to disregard jury findings and for JNOV should be granted: (1) when the evidence is conclusive, and one party is entitled to recover as a matter of law, *Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 227 (Tex.1990); or (2) when a legal principle precludes recovery. *See, e.g., Stevenson v. Koutzarov*, 795 S.W.2d 313, 319–20 (Tex.App.—Houston [1st Dist.] 1990, writ denied) (a judgment on the verdict on one of the causes of action was precluded because it was barred by the statute of limitations); *Graphilter Corp. v. Vinson*, 518 S.W.2d 952, 953 (Tex.App.—Dallas 1975, writ ref'd n.r.e.) (in a suit for breach of contract, a judgment on the verdict was precluded because the evidence showed the contract was illegal).

■ For a trial court to disregard a jury's findings and grant a motion for JNOV on the evidence, it must determine either there was no evidence to support an issue, or the converse, that the evidence established an issue as a matter of law, and the jury was not free to make a contrary findings. *Exxon Corp. v. Quinn*, 726 S.W.2d 17, 19 (Tex.1987); *Navarette v. Temple Indep. School Dist.*, 706 S.W.2d 308, 309 (Tex.1986); *Gerdes v. Mustang Exploration Co.*, 666 S.W.2d 640, 642 (Tex. App.—Corpus Christi 1984, no writ). If there is more than a scintilla of competent evidence to support the jury's findings, the JNOV will be reversed. *Navarette*, 706 S.W.2d at 309.

■ This Court will review the record in the light most favorable to the jury's findings, considering only the evidence and inferences supporting the finding and reject the evidence and inferences contrary to the findings. *Navarette*, 706 S.W.2d at 309. The trial court has no authority to substitute its findings for those of the jury. *Gerdes*, 666 S.W.2d at 642.

### 1. Davis' liability
### Estoppel

In points of error one, two, three, four, and nine, the plaintiffs challenge the trial court's order disregarding the jury's answers to questions four, five, and nine. In answering those questions, the jury found Davis and Masek had a fiduciary relationship, and Davis breached that relationship. In reply to these points of error, the defendants argue the plaintiffs are estopped from holding Davis individually liable for the actions of the corporation. The plaintiffs counter that the doctrine of estoppel does not apply because this case involves a suit against a corporate officer for individual wrongdoing as opposed to a corporate obligation.

■ In response to question six, the jury found "John Masek knew of the relationship between Davis Corp. and Marvin Davis and chose freely and voluntarily to deal with Davis Corp. through Masek Corp. in connection with the Davis Trading Company." The plaintiffs did not object to this question or to the jury's finding. This finding is binding on the parties in this Court. *Crain v. Hill County,* 613 S.W.2d 367, 369 (Tex.App.—Waco 1981, writ ref'd n.r.e.); *Lewis v. Isthmian Lines, Inc.,* 425 S.W.2d 893, 894–95 (Tex.App.—Houston [14th Dist.] 1968, no writ). We hold the plaintiffs are estopped from holding Davis liable in his individual capacity when they knowingly chose to contract with the corporation. *See Atomic Fuel Extraction v. Slick's Estate,* 386 S.W.2d 180, 190–91 (Tex.App.—San Antonio 1964, writ ref'd n.r.e.).

During the trial, the court granted the defendants' motion for directed verdict, refusing to pierce the corporate veil of the Davis Corp. The plaintiffs do not challenge that ruling in this appeal. In the absence of Masek raising the issue, we are constrained to agree with the trial court's ruling. *See Central Education Agency v. Burke,* 711 S.W.2d 7, 8 (Tex.1986) (the appellate court is not authorized to reverse trial court's judgment in the absence of properly assigned error). Thus, that unchallenged order bars a judgment against Davis, individually, for actions taken in his capacity as the president of Davis Corp.

In addition, the trial court properly instructed the jury that:

> [P]ersons who are in a fiduciary relationship of trust and confidence with each other owe each other a duty of utmost good faith and scrupulous honesty in their mutual endeavor. This fiduciary duty, however, does not extend so far as to create duties in derogation of the express terms of the partnership agreement.

There is no dispute Davis Corp., under the partnership agreement, had a unilateral contractual right to withdraw capital and liquidate Davis Trading.

■ We find the jury's answer to question six and the trial court's uncontested ruling refusing to pierce the corporate veil, support the trial court's JNOV as it relates to Davis, individually. In addition, we find that to hold Davis personally liable for Davis Corp.'s permitted action would clearly be in derogation of Davis Corp.'s rights under the partnership agreement. *See Exxon Corp. v. Atlantic Richfield Co.,* 678 S.W.2d 944, 947 (Tex.1984) (there can be no implied covenant about a matter specifically covered by the written terms of a contract).

Finding the trial court properly disregarded the jury findings that Davis breached a fiduciary duty, it is unnecessary for this Court to address the remaining jury questions relating to damages and malice.

### Waiver

■ The defendants also argue the plaintiffs waived any complaint against the judgment entered in favor of Davis. After the jury's verdict was returned, the plaintiffs' second memorandum in support of judgment proposed a form judgment which provided the plaintiffs would take nothing from Davis, but recover from Zarif in accordance with the jury's verdict. Relying on *Litton Industrial Products, Inc. v. Gammage,* 668 S.W.2d 319, 322 (Tex.1984), the defendants assert the submission of a proposed judgment constitutes a waiver.

In *Litton,* the court disapproved of a party's attempt to induce the trial court on one hand to render a judgment, but reserve in a brief, the right to attack the judgment if granted. *Id.* at 322. That is not the situation here. Here, the plaintiffs merely provided a draft judgment to conform to what the court had announced would be its judgment.

We overrule points of error one, two, three, four, and nine.

## 2. Zarif's liability

In points of error five, six, seven, eight, and 10, the plaintiffs challenge the trial court's order disregarding the jury's answers to questions 10, 11, 12, 13. In answering those questions, the jury found Zarif tortiously interfered with the partnership agreement, which proximately caused damages.

The defendants argue Zarif was acting as an agent of Davis Corp., and because there is no evidence showing he acted in furtherance of personal objectives, the trial court correctly entered judgment in favor of Zarif on the tortious interference claim.

Texas law protects existing, as well as prospective, contracts from interference. *Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 689 (Tex.1989); *CF & I Steel Corp. v. Pete Sublett & Co.,* 623 S.W.2d 709, 715 (Tex.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.). Not all interferences with contractual relations are tortious in nature. *Victor M. Solis Underground Util. & Paving Co. v. City of Laredo,* 751 S.W.2d 532, 535 (Tex.App.—San Antonio 1988, writ denied).

The elements of a cause of action for tortious interference with contractual relations are: (1) there was a contract subject to interference; (2) the act of interference was willful and intentional; (3) such intentional act was a proximate cause of the plaintiff's damages; and (4) actual damage or loss occurred. *Juliette Fowler Homes, Inc. v. Welch Associates,* 793 S.W.2d 660, 664 (Tex.1990); *Sterner,* 767 S.W.2d at 689. It is well established an agent cannot be liable for tortious interfer-

ence with its principal's contracts. *Baker v. Welch,* 735 S.W.2d 548, 549 (Tex.App.—Houston [1st Dist.] 1987, no writ). The agent and the principal are treated as one, because the agent is the principal's alter ego, and their financial interest is the same. *Id.*

The plaintiffs argue Zarif is not an agent, because he did not have the authority to act on behalf of Davis Corp. This is an irrelevant distinction. Zarif was the agent of Davis, individually, and Davis controlled Davis Corp. Zarif's rights were derived from Davis. Just as Davis, individually, could not be guilty of breach of a fiduciary duty in his dealing with his corporation, neither could his agent, Zarif.

A person who is in a confidential relationship with a party to a contract is privileged to induce the breach of such a contract. *Russell v. Edgewood,* 406 S.W.2d 249, 252 (Tex.App.—San Antonio 1966, no writ) (superintendent of school was not liable for inducing trustees to breach their contract with plaintiff); *see also McDonald v. Trammell,* 163 Tex. 352, 356 S.W.2d 143, 145 (1962) (a wife could not be held liable for attempting to persuade her husband not to carry out an unenforceable contract); *Tinkle v. McGraw,* 644 F.Supp. 138, 140 (E.D.Tex.1986) (defendant was not liable for causing his aunt and former client to breach contract for sale of property). Communications between family members are confidential and cannot form the basis for a tortious interference claim by third parties. Zarif was Davis' son-in-law, and thus a family member.

In order for the jurors to have answered jury question 10 affirmatively, they must have either decided Zarif was not an agent or if he was indeed an agent, he must have acted in furtherance of personal objectives. We find there is no evidence Zarif was anything other than Davis' agent.

Setting the agent/third-party argument aside, the jurors must also have found Zarif "deprived Masek Corp. of its interest in Davis Trading Company." There is no evidence Masek Corp. was "deprived" of anything. When Davis Corp. decided to with-

draw its capital investment, as it was contractually permitted, it did not affect Masek Corp.'s interest in Davis Trading. Masek Corp. was given the option of liquidating the company or finding another partner to replace Davis Corp.

Finding the trial court properly disregarded the jury findings that Zarif tortiously interfered, it is unnecessary for this Court to address the remaining questions relating to damages.

We overrule points of error five, six, seven, eight, and 10 and affirm the JNOV.