

## NUMBER 13-09-00399-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

STEVE A. CLAYTON, MELODY JANE
CLAYTON, TEXAS INDUSTRIAL PIPING
SERVICE, LTD., AND MASTEC
BLASTING AND PAINTING, LTD.,                                        Appellants,

v.

BOB PARKER,                                                          Appellee.

### On appeal from the 136th District Court
### of Jefferson County, Texas.

## MEMORANDUM OPINION[1]

### Before Justices Yañez, Rodriguez, and Garza
### Memorandum Opinion by Justice Rodriguez

---

[1]All issues of law presented in this case are well settled, and the parties are familiar with the facts. Therefore, we will not recite the law or the facts in this memorandum opinion, except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4.

Appellee Bob Parker filed suit against appellants Steve A. Clayton, Melody Jane Clayton, Texas Industrial Piping Service, Ltd. (T.I.P.S.), and Mastec Blasting and Painting, Ltd. (Mastec Blasting)[2] for breach of contract and fraud.[3]  A jury found that appellants breached agreements and committed fraud.  It also found that appellants were part of a conspiracy and were each responsible for the conduct of the other.  The jury determined breach of contract damages in the amount of $219,810.37, fraud damages in the amount of $12,485.55, and exemplary damages in the amount of $49,942.20.  The trial court entered judgment in conformity with the verdict and also awarded attorneys' fees against appellants.

By five issues, appellants complain that:  (1) the trial court entered an improper judgment on the breach of contract claim; (2) Parker is estopped from arguing that the Claytons' payment of $254,640.63 should be applied toward invoices submitted to Calabrian Corporation; (3) the trial court abused its discretion when it admitted the Calabrian invoices into evidence; and (4-5) the evidence is insufficient to establish fraud and to establish that each appellant was responsible for the conduct of the others.  We affirm in part, modify and affirm as modified in part, and reverse and remand in part.

## I. BACKGROUND

Parker began "factoring" invoices for appellants in late 2001 or early 2002, starting with the Calabrian invoices.[4]  After three or four years, Parker learned that some of the

---

[2]Our review of the record reveals that Mastec Blasting and Painting, Ltd. is identified on some invoices as Mastec Blasting and Painting, Ltd. and on some pleadings as Master Blasting & Painting, Ltd.  The judgment below and the briefing in this Court, however, refer to that appellant as Mastec Blasting and Painting, Ltd., and we will do likewise.

[3]Parker also sued appellants for defamation but dismissed those claims before trial.

[4]More specifically, as Parker testified, "invoice factoring" is a process by which a business seeks short-term financing from an investor.  The business provides the investor with an invoice.  The investor writes a check to the business for ninety percent of the balance due on that invoice.  When the client or customer

invoices sold to him by appellants might be "bogus." He reported this to a federal agency.

On June 5, 2006, Parker filed suit against appellants for, inter alia, breach of contract, alleging that appellants failed to deliver valid invoices reflecting actual amounts owed, and fraud, alleging that appellants had sold him false invoices and had also collected on invoices sold to Parker. Parker pleaded that he was entitled to recover $400,139.90 from appellants, jointly and severally. The invoices supporting the claimed damages were a part of an exhibit attached to the petition.[5] Parker also asked for punitive damages and attorney's fees. Appellants filed a general denial on July 5, 2006. On April 14, 2008, after a federal criminal investigation, the Claytons paid Parker $254,640.63.

On the first day of trial, July 28, 2008, Parker filed his first amended original petition, pleading the same causes of action and theories of liability, but reducing the claimed damages amount to $250,527.48, an amount again supported by invoices identified in an exhibit attached to his amended petition.[6] Parker again requested punitive damages and attorney's fees. On July 30, 2008, the third day of trial, appellants filed an amended answer generally denying the allegations and asserting payment and limitations as affirmative defenses.

At the close of Parker's case on July 30, appellants moved for a directed verdict on claims related to the Calabrian invoices. They argued that the Calabrian claims were

---

pays the full invoice amount, the investor gets the full amount less five percent which is placed in a reserve account to protect the business and the investor should a client or customer not pay on an invoice.

[5]Exhibit A contained 2002-2004 invoices from appellants to various clients, including the following: BoMac; Exxon-Mobile; Florida Gas Transmission; IMS; Industrial Steel Fabricators; Inland Orange; MAD, Ltd.; MasTec Pipeline; Neff Rental; NES; Quality Home Improvement; Reynold's Pipe and Supply; Sampson Steel Corp.; Superior Supply and Steel; Texas Polymer Services, Inc.; Tetra Process Services; and Theco.

[6]In addition to all invoices from the exhibit attached to Parker's original petition, this exhibit included Calabrian invoices. Moreover, although Parker sought damages in the amount of $250,527.48 in his amended petition, the invoices identified in this exhibit totaled approximately $595,000.

3

barred by the statute of limitations.[7] The trial court granted appellants' motion on the grounds that the claims were barred by limitations and that Parker had not established that the discovery rule applied.[8] Hoping for clarification of the trial court's ruling, this colloquy between Parker's counsel and the trial court followed:

[Parker's Counsel]: Could I ask a question of the Court regarding the Calabrian ruling?

Court: Your basis to loop that into limitations is the discovery rule. The discovery rule applies when you discover after the passing of limitations as to the harm. He was aware of the harm well before the passing of the limitations and, therefore, it is barred by the statute of limitations.

. . . .

What the Court intends to do is—is functionally direct verdict because in the issue I submit to them, I will instruct them to not consider any damages that accrued prior to whatever four years before the date of filing the lawsuit was.

[Parker's Counsel]: Is the Court, in doing so, effectively saying that the jury will be instructed that the payment made will be applied to invoices that were not barred by statute?

Court: Say that again.

[Parker's Counsel]: Will . . . the Court, in doing so, effectively instruct the jury that any payment that was made should be applied to invoices that were tendered within the statute of limitations?

Court: If I understand what you're saying correctly, yes. anything outside the limitations is not

---

[7]The Calabrian invoices were dated between October 2001 and February 2002. Suit was filed in June 2006.

[8]Although unclear from the record, before the trial began, the trial court had apparently considered appellants' motion for summary judgment based on this same argument and denied it, reasoning that fact issues remained, at that time, as to whether the discovery rule applied.

4

recoverable.  Anything within the limitations is recoverable . . . .

At the charge conference the following morning, appellants objected to "the issue of damages on Calabrian being submitted to the jury." This objection was directed to the set of four charge questions that asked, "Did [each appellant] fail to comply with the agreement?" The jury was instructed to "answer for each invoice contained on the next page." The "next page" of the charge did not list invoices but names of companies, including Calabrian, whose invoices from appellants had been factored by Parker.[9] In response to appellants' objection, the trial court stated the following:

> All right.  And as I . . . already indicated my intent to not allow that as an item of recovery; but in the outside chance that the court of appeals, as they have from time to time disagree[d] with me, if I don't include it and take it away after the fact, they'll send it back here and we'll have to go through all this again.  Whereas if I'm wrong, they can just stick it back in.

On August 1, 2008, the jury returned a verdict in favor of Parker.  It found that each appellant "fail[ed] to comply with the agreement," including any agreement with respect to the Calabrian invoices.  Based on the affirmative findings, the jury determined breach of contract damages in the amount of $219,810.37.  It also found fraud against each appellant and that, by clear and convincing evidence, the harm to Parker resulted from fraud.  The jury awarded fraud damages in the amount of $12,485.55 and exemplary damages totaling $49,942.20.  The jury also found that appellants conspired against Parker.[10]  Finally, it found that Mastec Blasting was responsible for the conduct of T.I.P.S., that T.I.P.S. was responsible for the conduct of Mastec Blasting, and that the Claytons

[9]The list included invoices from appellants to the following companies:  Bo-Mac; Exxon-Mobil; Florida Gas Transmission; IMS; Industrial Steel Fabricators; Inland Orange; MAD, Ltd.; Mastec; Neff Rental; NES; Quality Home Improvement; Reynold's Pipe and Supply; Sampson Steel Corp.; Superior Supply and Steel; Texas Polymer Services, Inc.; Tetra Process Services; Theco; and Calabrian.

[10]In addition, the jury found that appellants secured the execution of a document by deception that involved property valued at $1,500 or more and intentionally misapplied funds in a manner that involved substantial risk of loss to Parker and the value of the property was $1,500 or more.

5

were each responsible for the conduct of Mastec Blasting and T.I.P.S.

On August 26, 2008, appellants filed a motion for judgment notwithstanding the verdict (JNOV) urging, in relevant part, that because the trial court granted a directed verdict concerning all damages relating to Calabrian, the jury damage findings should be reduced by that amount—an amount identified by appellants as approximately $139,000. They further asserted that Parker should be estopped from arguing that the Claytons' payment of $254,640.63 should be applied toward the Calabrian invoices, rather than toward the invoices specifically outlined in the restitution order,[11] an argument appellants claim Parker did not make until the last day of trial.

Parker filed his motion for entry of judgment on August 29, 2010. Appellants responded, urging the position set out in their motion for JNOV. In a supplemental response, appellants also asserted that the total verdict amount, $282,238.12, should be reduced by the 2008 payment made by the Claytons to Parker. In addition, appellants argued that the balance should be further reduced by the amount of damages represented by the Calabrian invoices, which would leave a take-nothing verdict.

Nonetheless, the trial court denied the motion for JNOV and entered judgment in conformity with the jury's verdict. It also awarded attorney's fees in the amount of $16,000 for services rendered through trial, and, in the event of an unsuccessful appeal to the court of appeals, $5,000, and to the supreme court, an additional $5,000.

---

[11]The restitution order, referenced by appellants, does not appear in the record. Furthermore, it is undisputed that Court's Exhibit #1, setting out the summary of the amount of false invoices sold to Parker which appellants allege should have been paid by the $254,640.63 check, was only admitted for review by the trial court—not for review by the jury.

6

## II. ANALYSIS

## A. BREACH OF CONTRACT CLAIM

### 1. Statute of Limitations Bar

By their first issue, appellants complain of the award of damages on Parker's breach of contract claim.[12] We liberally construe this issue as a challenge to the trial court's denial of appellants' motion for JNOV. *See Perry v. Cohen*, 272 S.W.3d 585, 587-88 (Tex. 2008) (per curiam) ("'[W]e liberally construe issues presented to obtain a just, fair, and equitable adjudication of the rights of the litigants.'") (quoting *El Paso Natural Gas v. Minco Oil & Gas*, 8 S.W.3d 309, 316 (Tex. 1999)). Appellants assert that the trial court's directed verdict prevented a judgment which included damages based on the Calabrian invoices. We agree.

When made on an evidentiary basis, rulings on motions for JNOV are reviewed under the same legal-sufficiency test as are appellate no-evidence challenges. *See Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 830 (Tex. 2009) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005)). When such a ruling is based on a question of law, we review that aspect of the ruling de novo. *See In re Humphreys*, 880 S.W.2d 402, 404 (Tex. 1994) ("[Q]uestions of law are always subject to de novo review."); *John Masek Corp. v. Davis*, 848 S.W.2d 170, 173 (Tex. App.–Houston [1st Dist.] 1993, writ denied) (providing that a JNOV is proper when a legal principle precludes recovery); *see also Morrell v. Finke*, 184 S.W.3d 257, 290-91 (Tex. App.–Fort Worth 2005, pet. denied) (en banc) (concluding that the trial court erred by denying the defendants' motion for JNOV because plaintiff's claims against them were barred by the statute of limitations);

---

[12]Appellants do not challenge the jury's findings of liability against them on the breach of contract claim.

7

*Stevenson v. Koutzarov*, 795 S.W.2d 313, 319-20 (Tex. App.–Houston [1st Dist.] 1990, writ denied) (op. on reh'g) (concluding that a third-party plaintiff's JNOV on one of his causes of action was precluded because it was barred by the statute of limitations); *Graphilter Corp. v. Vinson*, 518 S.W.2d 952, 953 (Tex. App.–Dallas 1975, writ ref'd n.r.e.) (precluding a plaintiff's JNOV in a suit for breach of contract because the evidence showed the contract was illegal).

At the close of Parker's case, the trial court entered a directed verdict against Parker on claims related to the Calabrian invoices, concluding that those claims were barred by the statute of limitations and that Parker had not established that the discovery rule applied. Nonetheless, the jury found liability under an agreement based on the Calabrian invoices, and the jury's calculation of damages included $132,889.85, the balance due on the Calabrian invoices.[13] Appellants moved for JNOV on the damages awarded on the breach of contract claim because the trial court had granted a directed verdict concerning all damages relating to Calabrian. Although appellants urged the trial court to reduce the jury damage findings by that amount, it entered a judgment that conformed to the verdict.

Because the trial court's ruling involves legal principles, we review it de novo. *See In re Humphreys*, 880 S.W.2d at 404. The trial court directed a verdict against recovery of damages related to the Calabrian invoices, determining that such recovery was barred by the statute of limitations. This ruling remains unchallenged. Thus, a portion of the claim on which the trial court rendered judgment and awarded damages was barred by the statute of limitations. By asserting a limitations bar as to the Calabrian invoices in their

---

[13]While the Calabrian invoices totaled $194,083.60, appellants, in their motion for JNOV, requested only a reduction of approximately $139,000 and Parker, in his summary of invoices, admitted as Plaintiff's Exhibit V, listed the outstanding balance as $132,889.85. Although Parker testified that the balance of $132,889.85 should have been reduced by $3,732.45, an amount paid to his attorney for work done on the collection of the invoices, it is clear that the jury used the $132,889.85 figure in its calculation of damages.

motion for JNOV, appellants gave the trial court ample opportunity to rule on damages before an erroneous judgment was rendered.[14]  Therefore, reviewing the trial court's denial of appellants' motion for JNOV de novo, we conclude that a JNOV was proper because that legal principle precluded recovery.  *See id*.; *John Masek Corp.*, 848 S.W.2d at 173. Appellants' motion for JNOV should have been granted.  We sustain appellants' first issue.

## 2. Estoppel

Appellants assert, in their second issue, that by accepting the Claytons' $254,640.63 payment, Parker is estopped from applying the payment to the Calabrian invoices. Appellants argue Parker should have, instead, applied that payment to the invoices identified in the restitution order.[15]  Appellants argue that, under the equitable doctrine of quasi-estoppel, Parker is precluded from crediting the Clayton's payment "wherever he wants."  They contend that, by accepting and cashing the check, Parker acquiesced to the agreement between the government and the Claytons and is prevented from asserting that the payment was used for Calabrian's invoices.  They claim that "[i]n good conscience [Parker] should not [have been] allowed to assert this new, contrary argument on the last day of trial."

The defense of quasi-estoppel precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken.  *Lopez v. Munoz, Hockema & Reed*, 22 S.W.3d 857, 864 (Tex. 2000) (citing *Atkinson Gas Co. v. Albrecht*, 878 S.W.2d 236, 240 (Tex. App.–Corpus Christi 1994, writ denied)).  "The doctrine applies when it would be unconscionable to allow a person to maintain a position inconsistent with

---

[14]As noted above, the trial court had explained to Parker's counsel that anything outside the limitations was not recoverable and that the jury would be instructed to that extent.  No such instruction, however, was requested or given.  The trial court also stated that it intended "not to not allow [the set of Calabrian invoices] as an item of recovery."

[15]As noted above, the referenced order does not appear in the record.

9

one to which he acquiesced, or from which he accepted a benefit." *Id.* (citing *Atkinson Gas*, 878 S.W.2d at 240; *Vessels v. Anschutz Corp.*, 823 S.W.2d 762, 765-66 (Tex. App.–Texarkana 1992, writ denied)). This equitable doctrine operates as an affirmative defense. *Hamilton v. Morris Res., Ltd.*, 225 S.W.3d 336, 346 (Tex. App.–San Antonio 2007, pet. denied). Moreover, as an affirmative defense, quasi-estoppel must be pleaded or it is waived. *See* TEX. R. CIV. P. 94; *Rogers v. Continental Airlines Inc.*, 41 S.W.3d 196, 198 (Tex. App.–Houston [14th Dist.] 2001, no pet.); *Hay v. Shell Oil Co.*, 986 S.W.2d 772, 775 (Tex. App.–Corpus Christi 1999, pet. denied); *Atkinson Gas*, 878 S.W.2d at 239-40.

Parker filed an amended petition on the first day of trial. On the third and final day of trial, appellants amended their answer to include the affirmative defenses of payment and limitations. Their amended answer did not include the affirmative defense of quasi-estoppel. They did not plead that Parker was taking a position inconsistent with one taken earlier. Therefore, because appellants did not plead an estoppel defense, they have waived any argument based on quasi-estoppel. We overrule appellants' second issue.[16]

## B. FRAUD CLAIM

By their fourth issue, appellants contend that the evidence is legally insufficient to establish Parker's fraud claim. Specifically, appellants challenge the misrepresentation element of fraud.

In reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the jury's findings, giving full credit to all favorable evidence if any reasonable person could, and disregarding contrary evidence unless reasonable persons could not. *City of Keller*, 168 S.W.3d at 807. We must deny a legal sufficiency challenge

---

[16]Because appellants' first and second issues are dispositive of their breach of contract challenge, we need not address the third issue wherein they complain that the trial court abused its discretion when it admitted the Calabrian invoices into evidence. *See* TEX. R. APP. P. 47.1.

10

unless: (1) there is a complete absence of evidence of a vital fact; (2) all the evidence offered to prove a vital fact amounts to only a mere scintilla and no more; (3) the rules of law or evidence completely forbid any consideration of the only evidence offered to prove a vital fact; or (4) the evidence which the jury was compelled to consider and believe conclusively establishes the opposite of the vital fact. *Id*. at 810 & n.15-16. Vital facts may be proved by direct or circumstantial evidence. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004); *Transp. Ins. Co. v. Faircloth*, 898 S.W.2d 269, 285 (Tex. 1995). Texas jurisprudence also allows a reasonable inference to be made from circumstantial evidence. *Faircloth*, 898 S.W.2d at 285. Moreover,

> [j]urors are the sole judges of the credibility of the witnesses and the weight to give their testimony. They may choose to believe one witness and disbelieve another. Reviewing courts cannot impose their own opinions to the contrary.
>
> Most credibility questions are implicit rather than explicit in a jury's verdict. Thus, reviewing courts must assume jurors decided all of them in favor of the verdict if reasonable human beings could do so. Courts reviewing all the evidence in a light favorable to the verdict thus assume that jurors credited testimony favorable to the verdict and disbelieved testimony contrary to it.

*City of Keller*, 178 S.W.3d at 819.

The four fraud liability questions—each specific as to one of the appellants—asked the jury, "Did [appellant] commit fraud against Bob Parker?" The charge instructed that,

> Fraud occurs when—
>
> a.    a party makes a material misrepresentation,
>
> b.    the misrepresentation is made with knowledge of its falsity or made recklessly without any knowledge of the truth and as a positive assertion,
>
> c.    the misrepresentation is made with the intention that it should be acted on by the other party, and
>
> d.    the other party relies on the misrepresentation and thereby suffers

11

injury.

The charge also defined "misrepresentation" as "[a] false statement of fact or a promise of future performance made with an intent, at the time the promise was made, not to perform as promised." The jury found that each appellant committed fraud against Parker.

Testimony at trial established that Parker factored a number of invoices Mastec Blasting billed to Bo-Mac. Parker testified that these invoices, for which he was owed more than $90,000, were false. In addition, according to Ron Harris, comptroller for Bo-Mac in 2004, the invoices from Mastec Blasting were not valid invoices and did not represent work done by Mastec Blasting for Bo-Mac. Furthermore, Steve first testified that he had no recollection of any effort to collect the balance on the Bo-Mac invoices, but later stated that he had pursued Bo-Mac for payment. Steve also agreed that it was reasonable for Parker to believe that a Mastec Blasting invoice addressed to Bo-Mac meant that Bo-Mac owed money to Mastec Blasting. Steve's explanation for the Bo-Mac invoices was that the invoices were meant for a company called NES and that he did not know what went wrong.

When questioned about other allegedly fraudulent, unpaid invoices, Steve testified that he had no recollection of the invoices (Industrial Steel Fabricators and Inland Orange), he did not know whether they had been paid (Florida Gas), or the invoices had been incorrectly billed (ExxonMobil and Florida Gas). In addition, John Reynolds, owner of Reynolds Pipe and Supply, stated that his company received an invoice from T.I.P.S. in the amount of $985.19 for work that was either never requested or never completed. Jay Eisen, president of Sampson Steel Corporation, testified that his company was over-billed by Mastec Blasting on an invoice, in the amount of $152. Cheryl Moore, president and owner of Industrial Steel Fabricators, claimed that she was over-billed on two separate invoices by Mastec Blasting for an amount totaling more than $5,000.

12

Jodi Carr, a witness for Parker, testified that she provided "general secretarial duties" for appellants over a five-month period from late 2002 to early 2003. According to Carr, invoices for T.I.P.S. were generated by Melody Clayton, and although she believed that some of the invoices were not on the "up and up," Carr did not know whether any of the invoices submitted to Parker were "bogus." Carr also stated that she felt things were not right because she knew there were cash flow problems. She agreed that there was not "a lot of work going on."[17] Carr testified that she overheard comments made by Melody and David Rainwater, such as "Where are we going to pull the rabbit out of the hat this time?"[18]

Viewing the evidence in the light most favorable to the jury's findings, giving full credit to all favorable evidence if any reasonable person could, and disregarding contrary evidence unless reasonable persons could not, we conclude that the evidence offered to prove misrepresentation—a false statement of fact—amounts to more than a scintilla.[19] *See City of Keller*, 168 S.W.3d at 807, 810 & n.15-16. Various company representatives and Parker provided direct evidence to support a finding the appellants made material misrepresentations as reflected on the invoices. *See Ridgway*, 135 S.W.3d at 601 (Tex. 2004). Further, reasonable inferences supporting such a finding could be made from the circumstantial evidence provided by Carr. *See Faircloth*, 898 S.W.2d at 285. Moreover,

---

[17]On cross-examination, Carr testified that the Claytons rented a building in Rose City and could have been doing business out of that location.

[18]David Rainwater, not a party to the lawsuit, was identified as an estimator who bid on jobs.

[19]Appellants also assert that there was no evidence presented at trial that appellants did not intend to perform when entering into the contract. Without objection, the jury charge defined "misrepresentation" as "[a] false statement of fact *or* a promise of future performance made with an intent, at the time the promise was made, not to perform as promised." (Emphasis added.) Because we have concluded that the evidence was sufficient to establish misrepresentation—a false statement—we need not address this remaining assertion. *See Romero v. KPH Consol., Inc*., 166 S.W.3d 212, 221 (Tex. 2005) ("The sufficiency of the evidence must be measured by the jury charge when, as here, there has been no objection to it.").

because the jurors are the sole judges of the credibility of the witnesses and the weight to give their testimony, we must assume they chose to disbelieve Steve's testimony and to believe the other witnesses' testimony regarding the discrepancies in the invoices, the work requested or completed, and the reasons for those discrepancies. *See City of Keller*, 168 S.W.3d at 819. Thus, we conclude that the evidence supports the fraud finding. Appellants' fourth issue is overruled.

## C. ALTER EGO

By their fifth issue, appellants challenge the sufficiency of the evidence to support the jury's affirmative findings that the Claytons and T.I.P.S. were responsible for the conduct of Mastec Blasting and that the Claytons and Mastec Blasting were responsible for the conduct of T.I.P.S.[20] Based on the jury's answers, the trial court concluded that

---

[20]For example, jury question 31 asked whether Steve Clayton was "responsible" for the conduct of Mastec Blasting. The question set out that Clayton was "responsible" if:

Mastec Blasting and Painting, Ltd. was organized and operated as a mere tool or business conduit of Steve Clayton; there was such unity between Mastec Blasting and Painting, Ltd. and Steve Clayton, that the separateness of Mastec Blasting and Painting, Ltd. had ceased and holding only Mastec Blasting and Painting, Ltd. responsible would result in injustice; and Steve Clayton, [sic] caused Mastec Blasting and Painting, Ltd. to be used for the purpose of perpetuating and did perpetuate an actual fraud on Bob Parker primarily for the direct personal benefit of Steve Clayton.

In deciding whether there was such unity between Mastec Blasting and Painting, Ltd. and Steve Clayton, that the separateness of Mastec Blasting and Painting, Ltd. had ceased, you are to consider the total dealings of Mastec Blasting and Painting, Ltd. and Steve Clayton,, [sic] including:

1. the degree to which Mastec Blasting and Painting, Ltd.'s property had been kept separate from that of Steve Clayton,; [sic]

2. the amount of financial interest, ownership, and control Steve Clayton,. [sic] maintained over Mastec Blasting and Painting, Ltd. and

3. whether Mastec Blasting and Painting, Ltd. had been used for personal purposes of Steve Clayton.[sic]

or

whether Steve Clayton used Mastec Blasting and Painting, Ltd. for the purpose of perpetrating and did perpetrate an actual fraud on Bob Parker primarily for the direct personal benefit of Steve Clayton.

Mastec Blasting and T.I.P.S. were the alter egos of one another and of the Claytons and awarded damages against appellants, jointly and severally.

Appellants first complain of the sufficiency of the evidence to establish that they committed intentional fraud, theft, or forgery to such a gross extent that the court in equity should ignore the limited partnership structure. The jury charge, however, did not require such proof. *See Romero v. KPH Consol., Inc.*, 166 S.W.3d 212, 221 (Tex. 2005) ("The sufficiency of the evidence must be measured by the jury charge when, as here, there has been no objection to it."); *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513 (Tex. 2002) (citing *Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000)). Thus, appellants' argument is misplaced.

Moreover, contingent upon its fraud findings, the jury found that each appellant was part of a conspiracy that damaged Parker, and appellants do not challenge the jury's conspiracy findings. "It is well-settled law that upon joining a conspiracy, a defendant becomes a party to every act previously or subsequently committed by any of the other conspirators in pursuit of the conspiracy." *Greenberg Traurig of N.Y., P.C. v. Moody*, 161 S.W.3d 56, 95 (Tex. App.–Houston [14th Dist.] 2004, no pet.) (citing *State v. Standard Oil Co.*, 130 Tex. 313, 107 S.W.2d 550, 560 (1937)); *see Akin v. Dahl*, 661 S.W.2d 917, 921 (Tex. 1983) ("Once a civil conspiracy is found, each co-conspirator is responsible for the action of any of the co-conspirators which is in furtherance of the unlawful combination."). Therefore, "[a]ll conspirators[, all appellants in this case,] are jointly and severally liable for wrongful [fraudulent] acts done in furtherance of the conspiracy." *Smith v. Caldwell*, 754 S.W.2d 692, 693-94 (Tex. App.–Houston [1st Dist.] 1987, orig. proceeding); *see Bentley v. Bunton*, 94 S.W.3d 561, 608 (Tex. 2002) ("A party who joins in a conspiracy is jointly and

15

severally liable 'for all acts done by any of the conspirators in furtherance of the unlawful combination.'") (citing *Carroll v. Timmers Chevrolet, Inc.*, 592 S.W.2d 922, 926 (Tex. 1979) (quoting *Standard Oil*, 107 S.W.2d at 559)). Thus, appellants' argument, as it applies to the fraud findings and damage award, fails for this reason, as well.

Appellants further contend (1) that Parker only submitted evidence concerning ownership, which is insufficient to uphold the jury's verdict, and (2) that there is no evidence that the separateness of the corporation ceased or that holding the corporation liable would result in an injustice. Citing *Castleberry v. Branscum*, appellants state that Parker must prove (1) financial interest, ownership, or control by appellants, (2) such a unity between the corporation and individual(s) that the separateness of the single corporation has ceased, and (3) holding only the corporation liable would result in an injustice. *See* 721 S.W.2d 270, 272 (Tex. 1986). However, appellants set forth no supporting analysis or argument with citation to the record and to other relevant authorities for these contentions. Moreover, appellants do not address the sufficiency of the evidence as measured by that portion of the jury charge to which they did not object. *See Romero*, 166 S.W.3d at 221. We conclude that appellants' two-sentence contention and their citation to one authority is therefore inadequately briefed and, accordingly, waived. *See* TEX. R. APP. P. 38.1(i) (requiring brief to contain "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"); *Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284 (Tex. 1994) (discussing the "long-standing rule" that an issue may be waived due to inadequate briefing). We overrule appellants' fifth issue.

## III. Conclusion

We modify the judgment: (1) to omit any finding that Steve Clayton, Melody Clayton, Mastec Blasting and Painting, Ltd., and T.I.P.S., Ltd. failed to perform as related to the Calabrian invoices; (2) to omit any finding that each defendant is jointly and severally liable to plaintiff for those respective invoice amounts; and (3) to, instead, reflect a finding that recovery of damages related to the Calabrian invoices is barred by limitations. We affirm this portion of the judgment, as modified. *See* TEX. R. APP. P. 43.2(b). Furthermore, we reverse the judgment to omit $132,889.95 from the calculation of the award of breach of contract damages and remand for recalculation of those damages. We also reverse that portion of the judgment awarding interest as to breach of contract damages and remand for recalculation of pre-judgment and post-judgment interest. *See id*. at rule 43.2(d). We affirm the remainder of the trial court's judgment. *See id*. at rule 43.2(a).

NELDA V. RODRIGUEZ
Justice

Delivered and filed the
12th day of August, 2010.

17