Affirmed and Opinion filed February 3,
2011.

 

In
The

Fourteenth
Court of Appeals



NO. 14-10-00051-CV



DeClaris
Associates, Appellant 

v.

McCoy Workplace
Solutions, L.P., Appellee 



On Appeal from
the County Civil Court at Law No. 3

Harris County, Texas

Trial Court
Cause No. 874553



 

OPINION 

DeClaris Associates appeals from an adverse judgment
in its breach-of-contract lawsuit against McCoy Workplace Solutions, L.P.  DeClaris
sued McCoy seeking placement fees under a personnel-placement contract.  After
the trial court denied DeClaris’s motion for a directed verdict, holding that
the contract was ambiguous, a jury found that McCoy had not breached the
contract, and the court entered judgment in accordance with the jury’s verdict. 
On appeal, DeClaris contends that it is entitled to judgment as a matter of law
based on the unambiguous contract and, in the alternative, that the trial
court’s judgment should be reversed and remanded because the court erred in
instructing the jury on “time of compliance” under the contract.  We affirm.

Background

            DeClaris
Associates is a personnel-placement agency.  McCoy Workplace Solutions sells
office furniture, office products, and related services.  In December 2003, DeClaris
and McCoy executed a “Fee Schedule and Guarantee” under which McCoy agreed to
pay DeClaris a fee “contingent on the engaging of a candidate referred by
DeClaris.”  The agreement is a brief, one-page document.  Rita DeClaris, owner
of DeClaris Associates, signed the contract on behalf of her company, and
Stella Graham, McCoy’s human-resources representative, signed on behalf of
McCoy.

            In early 2004, McCoy
issued a job order to DeClaris for candidates to fill an open account-executive
position.  In response, DeClaris sent several resumes to McCoy, including one
for Shelly Hoffman.  In April 2004, Hoffman interviewed with Graham and another
McCoy representative.  DeClaris also contacted three references provided by
Hoffman, and Hoffman completed a personality assessment as part of her
candidacy for the position at McCoy.  McCoy, however, did not then hire
Hoffman.[1]

            According to the
testimony of Graham and Scott Skrabanek, McCoy’s chief financial officer and
chief operating officer, Hoffman, as a salesperson for an employee-benefits
company, began calling on Skrabanek in 2006.  Skrabanek indicated that he was
so impressed with Hoffman’s skills that he suggested she contact McCoy’s vice
president of sales at the time, David Downing, about a sales position with McCoy. 
According to Skrabanek, Downing then went through the normal interviewing and
hiring process with Graham, and Hoffman was hired.  He testified that Hoffman
never mentioned to him that two years before, she had been referred by DeClaris
for a position at McCoy.

Graham testified that in 2006, she did not remember
Hoffman from their contact two years prior, and Hoffman did not initially mention
it.  When Hoffman filled out an application for employment with McCoy in 2006, Graham
contacted a different recruiter, David Seeley, to conduct the initial screening
of Hoffman as a candidate.  After apparently speaking with her and checking her
references, Seeley reported favorably on Hoffman.  Hoffman then interviewed
with Downing and was hired as an account executive with an annual base salary
of $40,000 plus commissions of $2,083.33 per month.

In her 2006 application, Hoffman listed Skrabanek as
the person who referred her for the position.  Graham explained that during the
application process, she checked McCoy’s records for any prior information
regarding Hoffman, but there were no records for Hoffman because the company discarded
such records after one year.  Further according to Graham, she was not
contacted by Hoffman in the intervening years between Hoffman’s 2004 and 2006 applications
for employment.  Graham also stated that DeClaris did not follow up regarding
Hoffman during that time period.  

When DeClaris subsequently learned that Hoffman had
been hired by McCoy, it demanded a placement fee pursuant to the “Fee Schedule
and Guarantee.”  When McCoy refused, DeClaris sued for breach of contract.

Prior to trial, DeClaris moved for summary judgment,
which the trial court initially granted but then denied on reconsideration.  At
the close of the evidentiary portion of the trial, DeClaris moved for a
directed verdict, which the trial court also denied.  DeClaris’s position in
both motions was that (1) the contract unambiguously provided that DeClaris was
entitled to a fee if it referred a job candidate that McCoy hired and (2) the
evidence was equally clear that DeClaris referred a job candidate that McCoy
hired.

During the conference on submission of the jury
charge, the trial judge specifically stated that the contract between the
parties was ambiguous.  The court also determined that it should instruct the
jury regarding the time of compliance for a contract when the contract does not
specify a particular time frame.  The charge submitted to the jury consisted of
three questions covering liability, damages, and attorney’s fees.  The jury
answered only question no. 1 on liability.  That question reads in its entirety
as follows:

Question No.1

Did McCoy fail to comply with the terms of the
Fee Schedule and Guarantee?

In answering this question, it is
your duty to interpret the following language of the agreement:

“Our fees, payable by the employer, are contingent on
the engaging of a candidate referred by DeClaris Associates.”

You must decide its meaning by
determining the intent of the parties. Consider all the facts and circumstances
surrounding the making of the agreement, the interpretation placed on the
agreement by the parties, and the conduct of the parties.

Compliance with an agreement must
occur within a reasonable time under the circumstances unless the parties
agreed that compliance must occur within a specified time and the parties
intended compliance within such time to be an essential part of the agreement.

Answer “Yes” or “No.”

The jury responded “no” to question 1.  The parties
then filed a joint motion for judgment in accordance with the verdict, and the
court entered a judgment, titled “Agreed Judgment,” which both parties approved
as to form and substance.  On appeal, McCoy contends that DeClaris has waived
its right to appeal, and DeClaris argues that the trial court erred in
submitting any issues to the jury and in instructing the jury on time of
compliance.

Waiver of Appeal

            As an initial
matter, McCoy argues that DeClaris waived its right to appeal by moving for entry
of judgment in conformity with the jury’s verdict and by approving the judgment
as to form and substance.  We will begin our analysis by addressing the latter contention. 
For a judgment to be considered an agreed or consent judgment, such that no
appeal can be taken therefrom, either the body of the judgment itself or the
record must indicate that the parties came to some agreement as to the case’s
disposition; simple approval of the form and substance of the judgment does not
suffice.  See Shafer v. Gulliver, No. 14-09-00646-CV, 2010 WL 4545164,
at *2 (Tex. App.—Houston [14th Dist.] Nov. 12, 2010, no pet. h.) (mem. op.); Chang
v. Nguyen, 81 S.W.3d 314, 316 n.1 (Tex. App.—Houston [14th Dist.] 2001, no
pet.); Gahunia v. Acorn Private Ltd., Co., No. 14-98-01259-CV, 2000 WL
144077, at *1-2 (Tex. App.—Houston [14th Dist.] Feb. 10, 2000, pet. denied)
(not designated for publication).

Here, as indications that the judgment was based on
consent or agreement to the disposition, McCoy points to the fact that the
title of the judgment was “Agreed Judgment” and DeClaris’s counsel signed the
judgment as approved to both form and substance.  Under the circumstances of
this case, neither factor indicated that the parties had reached an agreement
regarding disposition or that DeClaris waived its right to appeal the
judgment.  The record demonstrates that the case was contested throughout the
proceedings, from initial pleadings to motions for summary judgment and
directed verdict to trial by jury.  Indeed, the judgment itself reflects that
it is “[b]ased upon the verdict of the jury,” not on any settlement or
agreement between the parties.  See Shafer, 2010 WL 4545164, at *2
(holding “entry requested” language in judgment did not convert judgment into
one based on consent or agreement); Gahunia, 2000 WL 144077, at *2
(stating that the record revealed the parties did not agree on the case’s
outcome as evidenced by the contested trial on the merits).  Consequently,
DeClaris did not abandon its right to appeal by signing the judgment.

As stated, McCoy additionally argues waiver of the
right to appeal because DeClaris participated in a joint motion requesting
entry of judgment in conformity with the jury’s no-liability verdict.  Again,
we disagree with this assertion under the circumstances presented in this
case.  In some circumstances, a party that moves for entry of judgment without
appropriate qualifying language waives its right to appeal the judgment; this is
so because generally a party may not request that the trial court take an
action and then complain on appeal when the court does what it was asked to do. 
See, e.g., Litton Indus. Prods., Inc. v. Gammage, 668 S.W.2d 319,
322 (Tex. 1984).  The Texas Supreme Court, however, has recognized that there
must be ways for a party that “desires to initiate the appellate process” to “move
the trial court to render judgment without being bound by its terms.”  First
Nat’l Bank of Beeville v. Fojtik, 775 S.W.2d 632, 633 (Tex. 1989) (per
curiam).

Here, DeClaris did not include a disclaimer in the
joint motion as recommended in Fojtik.[2] 
However, given the consistently contested nature of the proceedings, as well as
the simplicity of the issues involved—a single breach-of-contract claim went to
the jury on which DeClaris completely lost—it is unlikely that the judge or
McCoy was misled into thinking DeClaris did not plan to appeal simply because
DeClaris joined McCoy’s motion for judgment.  Cf. Nipper-Bertram Trust v.
Aldine I.S.D., 76 S.W.3d 788, 794 (Tex. App.—Houston [14th Dist.] 2002,
pet. denied) (holding record did not demonstrate disagreement with judgment
where party did not file motion for new trial and counsel acknowledged in oral
argument that party affirmatively agreed to judgment).  The judge had, in fact,
already ruled against DeClaris’s positions on the few key issues several times
(denying DeClaris’s motions for summary judgment and directed verdict and
overruling its objections to the charge).  The trial court had made its
rulings, and DeClaris had consistently expressed disagreement with those rulings.
 Cf. In re Bahn, 13 S.W.3d
865, 875 (Tex. App.—Fort Worth 2000, orig. proceeding) (“A party
should not be estopped from challenging a court’s order when the party provides
to the court a proposed order following what it believes was the court’s ruling
at the hearing, and the court signs it.”); John Masek
Corp. v. Davis,
848 S.W.2d 170, 174-75 (Tex. App.—Houston [1st Dist.] 1992, writ denied)
(holding that “merely provid[ing] a draft judgment to conform to what the court
had announced would be its judgment” does not result in waiver of an appeal).

In short, by joining the motion for judgment under
the circumstances of this case, DeClaris cannot be said to have invited the
trial court into error.  See John Masek, 848 S.W.2d at 174-75.  As
suggested in Fojtik, DeClaris was clearly desirous of initiating the
appellate process and therefore moved the court to render judgment according to
the court’s prior rulings on the simple issues involved.  775 S.W.2d at 633. 
DeClaris did not waive its right to appeal.

Ambiguity

            In its first five
issues, DeClaris asserts that the trial court erred in submitting any issues to
the jury, and in not granting judgment in its favor, because the agreement
between the parties is unambiguous and the key evidence was undisputed.[3]  According
to DeClaris, it was entitled to a placement fee under the express terms of the
contract because (1) it referred a candidate to McCoy and (2) McCoy hired that
candidate.  More specifically, DeClaris insists that having referred Hoffman to
McCoy as a candidate for employment in 2004, DeClaris was entitled to its 20
percent placement fee when McCoy hired Hoffman in 2006.  Under DeClaris’s
reading of the contract, it is inconsequential that two years had passed and
there was no evidence that DeClaris itself played any role in Hoffman’s 2006
application for employment with McCoy.

The issue of whether a contract is ambiguous is a
question of law that we review de novo.  Bowden v. Phillips Petroleum Co.,
247 S.W.3d 690, 705 (Tex. 2008).  If an agreement is worded such that it can be
given a definite legal meaning or interpretation, it is not ambiguous and can
be construed as a matter of law.  Lenape Res. Corp. v. Tenn. Gas Pipeline
Co., 925 S.W.2d 565, 574 (Tex. 1996).  If its meaning is uncertain, or it
is reasonably susceptible to more than one interpretation, then it is ambiguous
and its meaning must be resolved by the finder of fact.  Id.  In
construing a contract in a business context, we bear in mind the particular
business activity sought to be served and need not strain to apply rules of
construction in an effort to avoid ambiguity at all costs.  Id.  

An ambiguity in a contract may be said to be patent
or latent.  Patent ambiguity in a contract is ambiguity that is apparent on the
face of the contract; latent ambiguity is ambiguity that only becomes apparent
when a facially unambiguous contract is applied under particular
circumstances.  Nat’l Union Fire Ins. Co. v. CBI Indus., Inc., 907
S.W.2d 517, 520 (Tex. 1995).[4]

The portion of the agreement that the court
determined to be ambiguous, and thus submitted to the jury for interpretation,
reads as follows:  “Our fees, payable by the employer, are contingent on the
engaging of a candidate referred by DeClaris Associates.”  McCoy asserted in
the trial court and asserts on appeal that this sentence does not clearly and
unambiguously govern a situation such as that presented in this case, where an
individual applied for a position with McCoy, two years after having been
referred by DeClaris, after having recontacted McCoy in her capacity as a
salesperson for a different company, and with DeClaris playing no apparent role
in the new application and subsequent hiring of the individual.  We agree with
McCoy and the trial court that these circumstances revealed a latent ambiguity
in the agreement between the parties.  It is unclear from the contract language
whether DeClaris would be entitled to a placement fee under these circumstances. 
Although DeClaris indisputably did refer Hoffman in 2004, in response to a job
order from McCoy, it clearly did not refer her again in 2006 when Hoffman and
McCoy reconnected without DeClaris’s participation.  The contract does not
expressly address these circumstances.  Accordingly, the trial court did not
err in refusing to grant judgment as a matter of law to DeClaris or in
determining to submit the interpretation of the contract to the jury. 
DeClaris’s first five issues are overruled.

Jury
Instruction

In its sixth issue, DeClaris contends that the trial
court erred in submitting to the jury an instruction regarding time of
compliance under the contract.  We give trial courts wide latitude in assessing
the propriety of explanatory instructions and definitions.  H.E. Butt
Grocery Co. v. Bilotto, 985 S.W.2d 22, 23 (Tex. 1998).  So long as the
charge is legally correct, a trial court possesses broad discretion regarding
the submission of questions, definitions, and instructions.  Hyundai Motor
Co. v. Rodriguez, 995 S.W.2d 661, 664 (Tex. 1999).  We may not reverse a
judgment based on error in the submission of a jury instruction unless we
determine that the error probably caused the rendition of an improper
judgment.  See Kiefer v. Cont’l Airlines, Inc., 10 S.W.3d 34, 37
(Tex. App.—Houston [14th Dist.] 1999, pet. denied) (citing Tex. R. App. P.
44.1(a)(1)).

DeClaris specifically argues that there was no
evidence that compliance within a specified time period was an essential part
of the agreement.  DeClaris insists instead that the only evidence relevant to
time of compliance established that it was not “of the essence.”[5]  On this
basis, DeClaris concludes that the trial court mislead the jury into believing
that compliance within a particular time frame was an essential part of the
agreement.

We disagree.  Contrary to what DeClaris’s arguments
suggest, the trial court did not in fact instruct the jury either that time was
of the essence to the agreement or that compliance within a specified time was
an essential part of the agreement.  The court’s instruction actually did the
opposite; it explained to the jury that where parties do not agree to a
specific time for compliance or performance, and such is not made an essential
part of the agreement, then compliance need only occur within a reasonable
time.  This is a correct statement of the law.  See WesternGeco, L.L.C. v.
Input/Output, Inc., 246 S.W.3d 776, 784 (Tex. App.—Houston [14th Dist.]
2008, no pet.); Gen. Elec. Capital Corp. v. ICO, Inc., 230 S.W.3d 702,
713 (Tex. App.—Houston [14th Dist.] 2007, pet. denied).  Consequently,
DeClaris’s arguments are without merit, and we overrule its sixth issue.[6]

We affirm the trial court’s judgment.

                                                                                    

                                                                        /s/        Martha
Hill Jamison

                                                                                    Justice

 

 

 

Panel consists of Justices Brown, Boyce,
and Jamison.

 









[1]
The record is silent as to whether the account-executive opening in 2004 was
filled by a different candidate at that time or left unfilled.  The record is
also silent as to why Hoffman was not hired, although there is an indication in
Graham’s testimony that a decision-making process occurred in 2004, and a
decision was made not to hire Hoffman.





[2]
The Fojtiks included the following language in their motion for entry of
judgment:  “While Plaintiffs disagree with the findings of the jury and feel
there is a fatal defect which will support a new trial, in the event the Court
is not inclined to grant a new trial prior to the entry of judgment, Plaintiffs
pray the Court enter the following judgment.”  Fojtik, 775 S.W.2d at
633.  “Plaintiffs agree only as to the form of the judgment but disagree and
should not be construed as concurring with the content and result.”  Id.  
The supreme court concluded that this disclaimer sufficed to preserve the
Fojtiks’ ability to appeal as they appropriately sought entry of a final
judgment that would allow the appellate process to begin.





[3]
DeClaris makes no distinction in its arguments among its first five issues. 
Specifically, those issues assert that the trial court erred in:  (1) entering
the final judgment and overruling the motions for summary judgment and directed
verdict because the contract was unambiguous; (2) not granting a new trial
where the evidence conclusively established McCoy failed to comply with the
unambiguous terms of the agreement; (3) granting McCoy’s motion to reconsider
the summary judgment favoring DeClaris; (4) finding the contract to be
ambiguous; and (5) submitting to the jury the issue of the parties’ intent when
the contract was unambiguous.





[4]
The court in National Union provided the following example in describing
“latent ambiguity”:  “[I]f a contract called for goods to be delivered to ‘the green
house on Pecan Street,’ and there were in fact two green houses on the street, it
would be latently ambiguous.”  907 S.W.2d at 520 n.4.





[5]
The only evidence that DeClaris points to indicated that Graham, McCoy’s
human-resources representative, could have requested changes to the contract
before signing it but did not do so.





[6]
In the trial court, DeClaris’s counsel objected to the time-of-compliance
instruction by stating that the agreement itself unambiguously dealt with
reasonable time of compliance.  However, the agreement is completely silent in
regards to time of compliance.